Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **01 C 9601** | **DATE** | April 3, 2002 |
| **CASE TITLE** | Batteast Construction Co. v Public Building Commission of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/25/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Defendant's motion to dismiss is denied with respect to counts 1,2,4,5 and 6m but granted with respect to count 1. Defendant's motion to strike plaintiff's request for pre-judgment interest and attorney's fees is granted Defendant's answer to the remaining counts is due by 4/24/02..

(11) ● [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | APR 0 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 APR -4 PM 3: 56 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 5 2002

BATTEAST CONSTRUCTION COMPANY, INC.,

Plaintiff,

v.

PUBLIC BUILDING COMMISSION OF CHICAGO,

Defendant.

No. 01 C 9601

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Plaintiff, Batteast Construction Company, Inc. has filed a six count complaint against the Public Building Commission of Chicago. Count 1 of plaintiff's complaint alleges breach of contract for failure to make payments due. In Count 2, plaintiff alleges breach of contract resulting from defendant's hindrances and disruptions to plaintiff's performance of the contract. The remaining counts include breach of implied warranty (Count 3), breach of contract resulting from wrongful termination (Count 4), quantum meruit (Count 5), and promissory estoppel (Count 6). Defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Defendant also moves to dismiss each count for failure to state a claim. For the following reasons, defendants' motion is denied in part and granted in part.

## FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996). Plaintiff, an Indiana corporation with its principal place of business in South Bend, Indiana, is in the business of general construction



contracting. Defendant, a municipal corporation with offices in Chicago, Illinois, existing pursuant to the Illinois Public Building Commission Act, administers the construction of building facilities for the City of Chicago. Plaintiff submitted bids to defendant for the construction of the Chicago Children's Advocacy Center (the "Project") in accordance with defendant's plans and specifications. On November 9, 1999, defendant awarded a contract to plaintiff, identified as Contract No. 1123R, for the Project.

The contract provided that plaintiff would be paid the lump sum price of $4,461,908, and that the amount might be adjusted to include extras and any changes implemented pursuant to the terms of the contract. Generally, the scope of plaintiff's work included site clearing, demolition, miscellaneous earth work, and construction of the new facility. The contract required the Project's completion by November 1, 2000, but also provided that the completion date could be extended if plaintiff experienced problems to its work that were beyond its control or if defendant changed the scope of the plaintiff's work by ordering extras or other changes.

Plaintiff commenced performance under the contract on November 22, 1999, and periodically invoiced defendant for the progress plaintiff made pursuant to the contract. In turn, defendant made progress payments to plaintiff. During the course of the work, defendant periodically instructed plaintiff to perform extra work, pursuant to the contract's changes clause, in order to correct defects and errors in the plans. The parties administered specific changes using bulletin numbers (a specific change would be identified with a bulletin number). The parties then negotiated plaintiff's additional compensation that resulted from these bulletins. The parties eventually entered into nine formal contract change orders, which formally increased the contract price to $6,352,407.74 and extended the Project's completion date to December 27, 2000.

In January 2001, plaintiff was able to achieve substantial completion of the contract work. During this time, defendant accepted beneficial occupancy of the work and thereafter began using the facility for its intended purpose. In addition, defendant issued contract punch lists to plaintiff identifying the remaining work to be performed for acceptance of the Project and issued directives ordering plaintiff to perform extra and additional work. Many of these directives were incorporated into new bulletins. Defendant subsequently issued additional punch lists, which altered the original punch list that was used to identify the remaining work to be completed. Plaintiff alleges that the punch list items were completed by May 2001, but that, between January and June 2001, defendant continued to issue additional directives ordering plaintiff to perform extra work.

The complaint alleges that, during the course of the work, plaintiff diligently pursued the remaining work, but encountered disruptions, hindrances, and other problems that were beyond its control and caused by defendant's tortious and wrongful actions. These hindrances prevented plaintiff from completing the work within the time allotted by the contract. The complaint also alleges that, with the exception of the 56-day extension, defendant failed to grant plaintiff any additional time to complete its performance and threatened to assess contract-liquidated damages against plaintiff for failing to complete the Project within the performance period.

Defendant refused to make progress payments to plaintiff after May 9, 2001, and on June 26, 2001, forwarded a default termination letter to plaintiff pursuant Section 28 of the contract. As a result of the letter, plaintiff was forced to leave the Project site. Plaintiff alleges that, at the time of termination, it had completed all of the work required by the contract and was in the process of closing out the Project and resolving the few work items that remained open. Plaintiff claims defendant owes $978,140.58 as the unpaid amount of the adjusted contract price and $154,883 for

3

the out-of-scope work completed by plaintiff. Plaintiff also seeks other damages in an amount not less than $200,000.

**LEGAL STANDARD**

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiff's allegations entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46; *Travel All Over the World*, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

**DISCUSSION**

Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant moves to dismiss plaintiff's complaint arguing that plaintiff has failed to properly allege diversity of citizenship under 28 U.S.C. § 1332. For purposes of diversity jurisdiction, a corporation is a citizen of the state where it has its principal place of business as well as a citizen of the state in which it is incorporated. 28 U.S.C. 1332(c). Accordingly, plaintiff has alleged that it is an Indiana corporation with its principal place of business in South Bend, Indiana.

Despite these allegations, defendant argues that diversity fails because plaintiff has failed to allege any *specific* address in Indiana and because plaintiff has attached a copy of the Contract ("Exhibit '1'") that lists only plaintiff's Illinois address. Defendant cites to *Banco Del Estado v. Navistar Int'l Transp. Corp.*, 942 F.Supp. 1176, 1179 (N.D.Ill. 1996), and *Whirlpool Fin. Corp.*

4

*v. GN Holdings, Inc.*, 873 F.Supp. 111, 123 n. 18 (N.D. Ill. 1995), to argue that when the attached exhibit contains specific factual information that contradicts the complaint's allegations and precludes recovery as a matter of law, then the exhibit's information controls. Exhibit "1," however, does not directly contradict any jurisdictional allegations in the complaint.[1] Maintaining an office in Illinois is not inconsistent with plaintiff's principal place of business and state of incorporation being in Indiana. *See Macheras v. Center Art Galleries--Hawaii, Inc.*, 776 F.Supp. 1436, 1438 (D.Haw. 1991)(noting that, "for purposes of diversity jurisdiction, there is an important difference between merely transacting business in a state, and having one's principal place of business in a given state. Only in the latter case will a corporation be considered a citizen of a particular state for purposes of diversity jurisdiction."). As a result, plaintiff has sufficiently alleged diversity jurisdiction.

Count 1—Breach of Contract, Count 5—Quantum Meruit
and Count 6—Promissory Estoppel Against Defendant

Count 1 alleges that defendant breached the contract by failing and refusing to pay: 1) the remaining $978,140.58 of the adjusted contract price, and 2) the additional $154,883, which includes the out-of-scope work that plaintiff had submitted as bulletin cost proposals but had not yet incorporated into formal contract change orders. In Count 5, plaintiff seeks to recover in *quantum meruit* $154,883 for the value of labor, materials and equipment that plaintiff provided while performing the Project's out-of-scope work. Count 6 is a promissory estoppel claim

---

[1] Moreover, *Banco Del Estado* and *Whirlpool Fin. Corp.* are easily distinguishable because neither involved a scenario in which the defendant challenged the plaintiff's diversity allegations. *Banco Del Estado* involved an attached, flawed translation of a contract. *Whirlpool Fin. Corp.* dealt with a securities fraud claim, in which the compliant omitted facts and circumstances that were actually disclosed in the relevant transaction document.

5

against defendant. Defendants have moved to dismiss these counts, arguing that provision GC-28, which is part of the general conditions of the contract,[2] prohibits the contractor from receiving any further payment once the Commission terminates the contract for default. Provision GC-28 states that, *if the Contractor is in default*:

> ... then the Commission may, without prejudice to any other right or remedy and after giving the Contractor (and the surety or sureties on the Performance Bond given by the Contractor) seven (7) days written notice terminate the Contract for default. . . . In such case, the Contractor shall not be entitled to receive any further payment.

Whether there was justification for defendant's termination of plaintiff for default, however, is factually disputed. Plaintiff alleges that its work was completed at the time of termination and that the termination was wrongful and a breach of contract. Questions of fact cannot be resolved on a motion to dismiss. Taken in the light most favorable to plaintiff, Counts 1, 5 and 6 each state claims and cannot be dismissed.

Count 2—Breach of Contract

Count 2 alleges that defendant breached the contract by tortiously and wrongfully causing hindrances and disruptions to plaintiff's performance, by failing and refusing to grant additional and justified time extensions, and by failing to compensate plaintiff for the approximately $200,000 in damages it sustained as a result of these hindrances. Defendant has moved to dismiss Count 2 by pointing to an exculpatory, or "no damages for delay" clause in the contract. Provision GC-24 of the contract states the following:

---

[2] The general conditions of the contract are attached to the defendant's motion as Exhibit A. Plaintiff's complaint, however, had incorporated by reference each of these specific documents. Therefore, viewing these documents will not convert the motion into one for summary judgment.

6

> It is further expressly understood and agreed that the Contractor shall not be entitled to any damages or compensation, or to be reimbursed for any losses, on account of any delay or delays resulting from any of the aforesaid causes or any other cause whatsoever.

Plaintiff acknowledges this clause but insists that, even if the alleged "delays" as used in the complaint are equivalent to the "delays" as used in the contract, Illinois recognizes exceptions to these exculpatory provisions.

In Illinois, exceptions to exculpatory provisions, such as a "no damages for delay" clause, include circumstances in which the delay is caused by bad faith, the delay is not within the contemplation of the parties, the delay is of unreasonable duration, or the delay is attributable to the inexcusable ignorance or incompetence of the engineer. *J.B. Steel Contractors v. C. Iber & Sons*, 642 N.E.2d 1215, 1223 (Ill. 1994); *Mellon Stuart Contr. Inc. v. Metropolitan Water Reclamation Dist. of Chicago*, 1995 WL 124133 (N.D.Ill. 1995). Plaintiff's complaint specifically alleges that defendant's tortious and wrongful conduct caused the delays, the delays were beyond the contemplation of the parties, and the defendant's conduct delayed plaintiff's performance for an unreasonable duration. Therefore, plaintiff's compliant falls within the first three exceptions and is facially sufficient to withstand defendant's motion to dismiss.

Count 3—Breach of Implied Warranty

Count 3 alleges breach of implied warranty, claiming that defendant owed plaintiff an implied duty of good faith and fair dealing, as well as an implied duty to cooperate and not hinder plaintiff in the performance of its work. Defendant moves to dismiss Count 3, arguing that, under Illinois law, there is no separate claim for breach of any implied covenant of good faith and fair dealing. The court agrees. It is well settled that "the obligation to deal in good

7

faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract." *Industrial Specialty Chems., Inc. v. Cummins Engine Co. Inc.*, 902 F.Supp. 805, 811 (N.D.Ill. 1995); *Banco Del Estado v. Navistar Int'l Transp. Corp.*, 942 F.Supp. 1176, 1179 (N.D.Ill. 1996); *LaScola v. U.S. Sprint Comm.*, 946 F.2d 559, 565 (7th Cir. 1991); *Triad Assocs, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 589 (7th Cir. 1989), *cert. denied*, 498 U.S. 845 (1990). Because plaintiff has already alleged a separate breach of contract claim, a claim for breach of implied warranty of good faith, fair dealing, and duty to cooperate is superfluous and, as a result, is dismissed.

Count 4—Breach Of Contract—Wrongful Termination

Plaintiff alleges that, at the time of termination, plaintiff had completed its contract work, was not in default, and that defendant had no valid grounds to terminate plaintiff's performance for default. Defendant has attached to its motion a letter from plaintiff to defendant, and defendant's termination letter, arguing these letters disclose that the real reason for termination was in response to plaintiff's written refusal to perform.

For purposes of a 12(b)(6) motion, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings only when they are, 1) referred to in the plaintiff's complaint, and 2) are central to its claim. *Venture Assoc. Corp. v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993); *Stobinske-Sawyer v. Village of Alsip*, 2002 WL 287770 (N.D.Ill. 2002). In *Venture Assoc.*, the plaintiff's complaint referred to three letters, including an "offer to sell" and a "letter of intent," and alleged that those letters manifested the mutual assent of the parties to contract. The defendant attached those letters to its motion to dismiss, and the court

8

considered them because the documents were referred to in the complaint and were "central to [the plaintiff's] claim as they constitute[d] the core of the parties' contractual relationship."

In the instant case, plaintiff's complaint never refers to letters that defendant has attached to its motion. The complaint simply alleges that plaintiff had completed performance and that no valid grounds existed for defendant to terminate the contract. Moreover, even though plaintiff's letter may have some bearing on the plaintiff's claim for wrongful termination, it is not "central" to its claim in the sense that the "letter of intent" and "offer to sell" were central to the plaintiff's breach of contract claim based on mutual assent in *Venture Assoc.* Instead, the letters are central to defendant's defense of plaintiff's claims.

Therefore, to view the letters would require the court to convert defendant's motion to dismiss into one for summary judgment. Rule 12(b) states, "If, on a motion asserting the ... failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P.12(b). The court declines to do so at this stage. When reviewing a motion to dismiss, the court's inquiry is generally limited to the factual allegations contained within the four corners of the complaint. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir.1976). Therefore, defendant's motion to dismiss with respect to Count 4 is denied.

Request for Pre-judgment Interest and Attorney's Fees

Plaintiff requests pre-judgment interest from defendant, which is a municipal corporation. Plaintiff claims that a municipality is liable for interest if the funds have been wrongfully obtained *or* illegally withheld, citing *Pennwalt Corp. v. Metro. Sanitary District of Greater Chicago*, 379 F.Supp. 899, 900 (N.D.Ill. 1974). The Seventh Circuit has made it clear, however,

9

that a municipality is subject to pre-judgment interest only if the funds have been wrongfully obtained *and* illegally withheld. *McKee-Berger-Mansueto, Inc. v. Bd. of Ed. of City of Chicago*, 626 F.2d 559, 566 (7th Cir. 1980);[3] *Norton v. City of Chicago*, 690 N.E.2d 119, 127 (Ill. App. Ct. 1997). Plaintiff has not alleged that the funds were illegally obtained. Accordingly, defendant's motion to strike plaintiff's request for pre-judgment interest is granted.

Plaintiff also requests attorney's fees. Illinois law adheres to the "American Rule" by clearly prohibiting attorney's fees "absent a statute or a contractual agreement" authorizing an award. *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979). Plaintiff's reliance on *Zapata Hermanos v. Hearthside Baking*, 2001 WL 1000927 (N.D.Ill. 2001), is misplaced. In *Zapata*, Judge Shadur awarded attorney's fees pursuant to the Convention on the International Sale of Goods, the treaty applicable to the transactions in that case, and therefore was not bound by the American Rule. There is no such treaty or other exception in this case. Because plaintiff points to no statute or contractual agreement that would suggest the otherwise, defendant's motion to strike plaintiff's request for attorney's fees is granted.

## CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is denied with respect to Counts 1, 2, 4, 5 and 6, but granted with respect to Count 3. Defendant's motion to strike plaintiff's request for pre-judgment interest and attorney's fees is granted. Defendant is ordered

---

[3] In *McKee-Berger-Mansueto*, the Seventh Circuit stated, "Although the district court in *Pennwalt Corporation v. The Metropolitan Sanitary District of Greater Chicago*, 379 F.Supp. 899, 900 (N.D.Ill. 1974) stated the exception differently, that the funds must be wrongfully obtained or illegally withheld, other decisions of the Illinois Supreme Court citing this particular exception to the common law have used the conjunctive "and," and we believe this to be the proper test." The Seventh Circuit then cited *Morgan v. City of Rockford*, 31 N.E.2d 596 (1940) and *Smith v. County of Logan*, 119 N.E. 932, 936 (1918) to support its reasoning.

10

to file its answer to the remaining counts on or before April 24, 2002. This matter is set for a report on status April 25, 2002, at 9:00 a.m.

**ENTER:** **April 3, 2001**

_____
**Robert W. Gettleman**
**United States District Judge**